# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SHARIOT ULLAH and
NUR ULLAH,
Plaintiffs,

v.

HELEN LaFAVE, Chargé d'Affaires, U.S.
Embassy in Dhaka, Bangladesh,
and
MARCO RUBIO, Secretary of the U.S.
Department of State,
Defendants.

CIVIL ACTION NO.: 25:12804

AGENCY CASE NO.: DHK2015733034

## FIRST AMENDED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

## INTRODUCTION

1. Plaintiffs Shariot Ullah and Nur Ullah bring this action to compel the U.S. Department of State to complete adjudication of Plaintiff Nur Ullah's immigrant visa application, which has been unreasonably delayed following an interview and apparent approval at the U.S. Embassy in Dhaka, Bangladesh.

2. Nur Ullah attended his immigrant visa interview on January 8, 2025. At the close of the interview, he was told the case was approved pending routine post-interview steps, yet the visa was not issued.

3. Since that date, the application has been placed in "administrative processing" under INA § 221(g) and remains unresolved despite repeated inquiries and a congressional inquiry on September 24, 2025 confirming ongoing administrative processing without a timeline for completion.

4. Defendants' failure to take final action violates the Administrative Procedure Act's command to act within a reasonable time, the Immigration and Nationality Act and its implementing regulations requiring issuance or refusal of visas, and State Department policy that family-based immigrant visas be processed expeditiously once visa numbers are available and the case is complete.

5. Plaintiff Shariot Ullah is an elderly U.S. citizen with significant health conditions who requires care and daily assistance that his adult son, Plaintiff Nur Ullah, is ready and able to provide. The delay has caused severe and continuing harm through prolonged separation, emotional distress, and practical and financial hardship.

6. Since January 2026, Defendants have also implemented a worldwide policy memorandum titled "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge" (the "Policy") without notice-and-comment rulemaking. The Policy directs consular officers to continue scheduling and interviewing immigrant visa applicants but, based solely on the applicant's nationality, to refuse every immigrant visa application for nationals of specified countries under INA § 221(g), even where the applicant is otherwise eligible and not likely to become a public charge under the case-by-case factors Congress prescribed in INA § 212(a)(4), 8 U.S.C. § 1182(a)(4).

7. On January 28, 2026, the District of Nevada granted emergency injunctive relief staying the Policy as applied to two adoptive children, holding that Plaintiffs were likely to succeed on their Administrative Procedure Act challenge because the Policy is contrary to the INA's individualized inadmissibility framework, exceeds the authority invoked in 8 U.S.C. § 1201(g), and constitutes a legislative rule that required notice and comment. *Sangster v. Rubio*, No. 3:25-cv-00447-ART-CSD, Order Granting TRO (D. Nev. Jan. 28, 2026) The

same flaws infect the Policy here, and the Policy has intensified the already-unreasonable delay in adjudicating Plaintiff Nur Ullah's long-pending, interview-complete immigrant visa application.

**PARTIES**

8. Plaintiff SHARIOT ULLAH is a United States citizen who resides in Lynn, Massachusetts. He is the father of co-plaintiff Nur Ullah and the petitioner of a Form I-130 filed on behalf of his son.

9. Plaintiff NUR ULLAH is a citizen and resident of Bangladesh. He is the beneficiary of Plaintiff Shariot Ullah's approved Form I-130 petition, he completed the required DS-260 application, and he appeared for his immigrant visa interview on January 8, 2025. Since that interview, his application has been held in INA § 221(g) administrative processing without a decision.

10. Defendant HELEN LAFAVE is the Chargé d'Affaires of the United States Embassy in Dhaka, Bangladesh. She is responsible for consular operations at Embassy Dhaka. She is sued in her official capacity only.

11. Defendant MARCO RUBIO is the Secretary of the U.S. Department of State. He is responsible for administration of the State Department, including consular visa adjudications worldwide. He is sued in his official capacity only.

**JURISDICTION AND VENUE**

12. This action arises under the Constitution and laws of the United States, including the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 701-706; and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.

13. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (Mandamus Act). The Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 702.

14. Venue is proper in this District under 28 U.S.C. § 1391(e) because Plaintiff Shariot Ullah resides in this District and no real property is involved.

15. This suit challenges Defendants' failure to act on a nondiscretionary duty to adjudicate a visa application. It does not seek review of a discretionary decision or the basis of a final consular adjudication.

## STATEMENT OF FACTS

16. Plaintiff Shariot Ullah filed a Form I-130 Petition for Alien Relative on behalf of his adult son, Plaintiff Nur Ullah, on April 6, 2015 (USCIS Receipt No. WAC1590258029). USCIS approved the petition and forwarded the case for consular processing to the Department of State on or about July 27, 2015.

17. The Department assigned consular case number DHK2015733034 for Nur Ullah's immigrant visa processing. Nur submitted a DS-260 Immigrant Visa and Alien Registration application on June 4, 2020. When a visa number became available in Nur's immigrant visa category, Defendants scheduled an immigrant visa interview before a consular officer in Dhaka, Bangladesh.

18. On January 8, 2025, Nur Ullah appeared for his immigrant visa interview at the U.S. Embassy in Dhaka, Bangladesh. He truthfully answered all questions and provided all requested information.

19. Following the interview, Nur was initially informed that the visa application was approved. However, the consular section subsequently retained the case for additional checks and did not issue the visa. The case was marked for INA § 221(g) administrative processing.

20. On September 24, 2025, the Embassy confirmed in correspondence to Senator Edward J. Markey that the case remained in administrative processing and provided no timeframe for resolution (Exhibit 1).

21. Plaintiffs and their family have made repeated status inquiries but have received only form communications that the case is undergoing administrative processing.

22. Plaintiff Shariot Ullah is elderly and faces significant medical issues. He urgently needs his adult son's regular presence to assist with activities of daily living, medical appointments, and household management. The delay perpetuates separation and exacerbates Plaintiff Shariot Ullah's health and emotional hardship, including severe depression. Plaintiff Shariot Ullah also suffers from several medical conditions, including type 2 diabetes mellitus with gastroparesis, late-onset Alzheimer's dementia without behavioral disturbances, bilateral shoulder arthritis, hypertrophic cardiomyopathy, and anemia.

23. Defendants have identified no additional documentation required from Plaintiff Nur Ullah, and there is no stated timeline for completing administrative processing.

24. Plaintiffs are facing severe personal hardship due to the delay. Plaintiff Shariot Ullah is unable to work due to his age, and his wife, who is over 75 years old, cannot provide monetary support. Plaintiff Shariot Ullah relies on modest Social Security benefits and frequent assistance from his daughter. He is concerned about his health and well-being as he ages, as the prolonged separation from his son has left him emotionally and physically

vulnerable. Plaintiffs are separated by an 11-hour time difference, creating communication barriers compounded by poor internet connectivity.

25. Plaintiffs are also facing financial hardship due to the delay. Plaintiff Shariot Ullah's benefits are insufficient to cover living expenses, requiring assistance from his daughter whose family is financially strained. Despite his own limited means, Plaintiff Shariot Ullah has sent money to Plaintiff Nur Ullah in Bangladesh. Further travel to visit Plaintiff Nur Ullah would be very expensive and difficult due to Plaintiff Shariot Ullah's health. Plaintiff Nur Ullah's presence in the United States would provide essential support and stabilize the household.

26. Defendants have provided no facially legitimate and bona fide reason for continued withholding of a final adjudication or any explanation for a delay far exceeding the Department's own stated timeframes for family-based immigrant visas.

27. On January 14, 2026, the Secretary of State circulated the Policy). The Policy directs consular officers worldwide to refuse, under INA § 221(g), immigrant visa applications filed by nationals of specified countries based on a categorical "public charge" risk assigned to nationality, rather than on the individualized, case-by-case assessment Congress prescribed in INA § 212(a)(4), 8 U.S.C. § 1182(a)(4).

28. The Policy instructs consular officers to continue scheduling and conducting interviews and to assess other grounds of inadmissibility. But even where the officer identifies no statutory ground of ineligibility, the Policy requires refusal based on nationality alone, and it provides no definite end date for lifting the pause. Defendants have publicly confirmed that, for affected nationalities, processing continues but immigrant visas will not be issued during the pause (Exhibit 2).

29. The Policy has immediate and sweeping consequences for U.S. citizens and lawful permanent residents nationwide who have petitioned for family members, like Plaintiff Shariot Ullah, because it transforms the immigrant visa process from individualized adjudication into a categorical freeze for certain nationalities, without prior notice or an opportunity for public comment.

**STATUTORY AND REGULATORY FRAMEWORK**

30. Family reunification has long been a key principle of U.S. immigration policy and is embodied in the Immigration and Nationality Act (INA). The INA of 1952, as amended by the 1965 amendments and the Immigration Act of 1990, prioritizes admitting close family members of U.S. citizens and lawful permanent residents to preserve family unity.

31. The INA establishes both non-numerically limited and numerically limited family categories. "Immediate relatives" (spouses, unmarried children under 21, and parents of U.S. citizens) are not subject to numerical limits. INA § 201(b)(2)(A)(i), 8 U.S.C. § 1151(b)(2)(A)(i).

32. Adult sons and daughters of U.S. citizens fall within the family-sponsored preference system and are subject to numerical limitations and per-country caps. Unmarried sons and daughters (21 or older) are in the first family-preference category (F1). Married sons and daughters are in the third family-preference category (F3). INA § 203(a), 8 U.S.C. § 1153(a).

33. Because these categories are numerically limited, visa availability often requires many years of waiting. Congress nonetheless intended that, once a visa number becomes available and the case is documentarily complete, adjudication proceed promptly and within established benchmarks.

34. Congress also recognized the importance of preserving family unity, particularly the relationship between a U.S. citizen parent and child, by authorizing waivers that treat a U.S. citizen or lawful permanent resident parent as a qualifying relative for certain inadmissibility grounds, including INA § 212(a)(9)(B)(v) (unlawful presence) and INA § 212(i) (misrepresentation). These provisions underscore Congress's protective stance toward U.S. citizen parents sponsoring adult children and confirm the expectation that, when a visa is available, adjudication should be timely.

35. By statute, all immigrant visa applications must be reviewed and adjudicated by a consular officer. INA § 222(b), 8 U.S.C. § 1202(b).

36. Congress also codified a detailed, individualized public-charge standard. Under INA § 212(a)(4), consular officers must make a forward-looking, case-by-case determination (based on the applicant's specific age, health, family status, assets/resources/financial status, education and skills, and any affidavit of support) whether the particular applicant is likely to become a public charge. 8 U.S.C. § 1182(a)(4).

37. This individualized framework is incompatible with a categorical nationality-based "public charge" presumption. The INA requires consular officers to weigh the totality of the applicant's circumstances, not to treat country of nationality as a dispositive proxy for future public-charge risk.

38. Congress has likewise prohibited discrimination in the issuance of immigrant visas based on "nationality, place of birth, or place of residence," subject to narrow statutory exceptions. 8 U.S.C. § 1152(a)(1)(A).

39. By regulation, once a visa application has been properly completed and executed before a consular officer, the officer must either issue the visa or refuse it under a specific statutory

ground such as INA §§ 212(a) or 221(g). 22 C.F.R. § 42.81(a); see also 22 C.F.R. § 40.6 (a visa may be refused only on a ground set by law or regulation).

40. The regulations also prescribe interview and execution requirements, see 22 C.F.R. §§ 42.62, 42.67, as well as issuance procedures (sign, seal, and delivery), see 22 C.F.R. § 42.73. If refused, the officer must provide timely written notice of the legal basis and any available relief. 22 C.F.R. § 42.81(b), (e).

41. Department policy in the Foreign Affairs Manual (FAM) confirms there is no authority to hold or suspend a properly filed visa application indefinitely: once executed, a visa must be either issued or refused with notice of the legal basis and any available administrative relief. See 9 FAM 504.9-2; 9 FAM 504.11-2; 9 FAM 504.11-3 (221(g) quasi-refusal).

42. Congress and the Department have set clear timetables for family-based immigrant visas: immediate-relative cases within 30 days and all other family-based immigrant visas within 60 days after receipt of necessary information from the applicant and DHS. See 9 FAM 504.7-2(b); District of Columbia Appropriations Act, 1999, Pub. L. 106-113, § 237.

43. The APA requires agencies to conclude matters within a "reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to compel action unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1).

**JURISDICTIONAL CONSIDERATIONS AND CONSULAR NONREVIEWABILITY**

44. While consular decisions on the merits of visa issuance are generally insulated from review, courts have jurisdiction to compel agency action unlawfully withheld or unreasonably delayed. Challenges to inaction are distinct from review of discretionary refusals, and courts have granted relief in cases involving prolonged administrative processing.

45. Where an application has not been finally refused but is held in "administrative processing," the doctrine of consular nonreviewability does not bar judicial review to compel adjudication. This action seeks only to compel a decision consistent with law.

46. This action does not seek review of a removal order or a discretionary visa denial and is therefore not barred by INA § 242, 8 U.S.C. § 1252.

## STANDARD OF REVIEW

47. On a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiffs' favor. Whether an agency delay is "unreasonable" is a context-specific inquiry governed by the TRAC factors and turns on a fact-intensive record (*Telecommunications Research & Action Center v. FCC* (TRAC), 750 F.2d 70 (D.C. Cir. 1984)).

48. The TRAC framework involves balancing multiple considerations, including the agency's rule of reason, statutory timetables, the nature of the interests at stake, competing priorities, prejudice from delay, and the absence or presence of impropriety. These are not purely legal issues suitable for resolution at the pleadings stage without a factual record. Courts have observed that "reasonable time for agency action is typically counted in weeks or months, not years." *In re American Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004).

49. Accordingly, to the extent Defendants move to dismiss on the ground that the delay is reasonable as a matter of law, such a determination is premature under *TRAC* at the pleadings stage and should be denied or deferred pending a factual record.

50. Plaintiffs also challenge Defendants' January 14, 2026 Policy under the Administrative Procedure Act, 5 U.S.C. § 706(2). The APA directs courts to set aside agency action that

is arbitrary and capricious, contrary to law, in excess of statutory authority, or adopted without observance of procedure required by law, including the notice-and-comment requirement for legislative rules. 5 U.S.C. §§ 553, 706(2)(A), (C), (D).

51. The distinction between interpretive rules (which may be issued without notice and comment) and legislative rules (which must undergo notice-and-comment rulemaking) is governed in the First Circuit by a functional, multi-factor inquiry. See, e.g., *New Hampshire Hosp. Ass'n v. Azar*, 887 F.3d 62 (1st Cir. 2018); *Levesque v. Block*, 723 F.2d 175 (1st Cir. 1983); *La Casa Del Convaleciente v. Sullivan*, 965 F.2d 1175 (1st Cir. 1992).

52. As set forth below, the Policy is a legislative rule under the First Circuit's test because it represents a major exercise of delegated authority that transforms worldwide immigrant-visa adjudication from individualized adjudication into a categorical nationality-based refusal regime, without interpreting statutory language or merely filling gaps in an existing scheme. The Policy therefore cannot lawfully be implemented without notice and comment.

## APPLICATION OF THE TRAC FACTORS TO PLAINTIFF'S CASE

53. First - Rule of Reason: Defendants' open-ended administrative processing provides no ascertainable rule of reason. Department policy contemplates adjudication of family-based visas within 30/60 days of completeness; here, more than thirteen months have passed since Nur Ullah's January 8, 2025 interview with no final action. The Embassy's September 24, 2025 response confirms indefinite administrative processing without a timeline, and the January 2026 Policy underscores that Defendants are using INA § 221(g) as a vehicle for an open-ended "pause" rather than timely adjudication.

54. Second - Congressional Timetable: Congress and the Department have articulated timetables for family-based immigrant visas (30/60-day benchmarks). Defendants' delay far exceeds those benchmarks without any case-specific justification.

55. Third - Human Health and Welfare: Plaintiff Shariot Ullah is an elderly U.S. citizen who requires regular caregiving and assistance with activities of daily living that his adult son, Plaintiff Nur Ullah, would provide upon admission. Harm to human welfare weighs heavily under TRAC and is far less tolerable than economic delay.

56. Fourth - Effect of Expediting on Competing Priorities: While Defendants may cite competing demands, this factor cannot justify indefinite inaction in the face of statutory timetables and acute family-unity concerns on the part of United States citizens. The requested relief merely compels a decision (issuance or refusal) consistent with law. Further, on information and belief, similarly situated applicants have been processed ahead of Plaintiff Nur Ullah without a reasoned basis, as reflected in publicly available visa-issuance data.

57. Fifth - Prejudice from Delay: Each additional day of delay compounds irreparable harm, depriving Plaintiffs of irreplaceable time together, increasing medical risk, and frustrating the purpose of Congress's family-preference system once a visa number is available.

58. Sixth - Agency Impropriety Not Required: Plaintiffs need not show bad faith. Yet the unexplained post-interview delay, despite indications of approval and the absence of any identified ground of ineligibility, underscores the unreasonableness of Defendants' inaction.

**LEGAL DUTIES OF DEFENDANTS**

59. Defendants have a mandatory duty to adjudicate Plaintiff Nur Ullah's immigrant visa application within a reasonable time. The INA, regulations, and the FAM impose a nondiscretionary, binary obligation: once properly executed, a visa must be either issued or refused on a legally specified ground, with notice. There is no authority to suspend, hold, or indefinitely warehouse a case in § 221(g) status.

60. Defendants have failed to complete their duties within a reasonable time. Statutes and policy set 30/60-day benchmarks, and "reasonable time" for agency action is measured in weeks or months, not years. Plaintiff Nur Ullah's case has languished more than thirteen months post-interview despite completeness, repeated inquiries, and the absence of any identified ground of ineligibility.

61. Defendants have unlawfully withheld agency action and, in the alternative, have acted arbitrarily and capriciously by maintaining indefinite administrative processing without articulating a statutory ground for refusal or a rule of reason for continued delay.

62. Defendants also have a duty to adjudicate immigrant visa applications consistent with the INA's individualized inadmissibility framework. Congress specifically required that public-charge determinations be made case-by-case based on the totality of the applicant's circumstances and the statutory factors in INA § 212(a)(4), 8 U.S.C. § 1182(a)(4); nationality is not a statutory factor and cannot lawfully be treated as dispositive.

63. Defendants' January 14, 2026, Policy purports to replace that individualized framework with a categorical nationality-based refusal regime, implemented through INA § 221(g) "refusals" and justified only by generalized assertions about groups of people. That is not interpretation of existing statutory language; it is new lawmaking.

64. Under the First Circuit's test for distinguishing interpretive from legislative rules, the Policy is legislative and required notice and comment. See *New Hampshire Hosp. Ass'n v. Azar*, 887 F.3d 62 (1st Cir. 2018). The Policy (i) represents a major exercise of delegated authority with worldwide effect on visa adjudications; (ii) lacks any meaningful interpretive methodology tied to statutory text; (iii) is inconsistent with, and effectively amends, existing regulations and longstanding practice requiring individualized adjudication; (iv) does not merely fill gaps but instead creates a new nationality-based standard for "public charge" risk; and (v) has sweeping pragmatic consequences for large numbers of U.S. citizens and lawful permanent residents who relied on existing law to petition for close family members. The Policy was issued without notice and comment and therefore is unlawful.

65. As the District of Nevada held in granting a TRO in *Sangster v. Rubio*, No. 3:25-cv-00447-ART-CSD (D. Nev. Jan. 28, 2026). Plaintiffs are likely to succeed on the merits of an APA challenge to the Policy because it contravenes the INA's case-by-case public-charge framework, exceeds the statutory authority invoked, and constitutes a legislative rule adopted without required procedures. Although *Sangster* applied Ninth Circuit and D.C. Circuit precedent, its reasoning maps onto and reinforces the First Circuit's test; and it confirms that Defendants cannot evade notice-and-comment requirements by labeling a sweeping nationality-based ban as a temporary "pause."

66. *Sangster*'s analysis dovetails with the First Circuit's approach. The Ninth Circuit's adopted D.C. Circuit framework focuses on whether, absent the challenged rule, there would be an adequate legislative basis for the agency's action and whether the rule effectively amends existing law, questions that track the First Circuit's emphasis on statutory delegation,

interpretive methodology, consistency with existing regulations, and pragmatic impact. Under either set of guideposts, the Policy is legislative and unlawful absent notice-and-comment rulemaking.

## COUNT I – APA, 5 U.S.C. § 706(1): UNREASONABLE DELAY

67. Defendants have unlawfully withheld or unreasonably delayed adjudication of Plaintiff Nur Ullah's immigrant visa application in violation of 5 U.S.C. §§ 555(b), 706(1). Plaintiffs have no adequate alternative remedy and are entitled to relief compelling adjudication forthwith.

## COUNT II - APA, 5 U.S.C. § 706(2): ARBITRARY AND CAPRICIOUS AGENCY ACTION.

68. Maintaining indefinite administrative processing without a statutory basis or articulated rule of reason is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and without observance of procedure required by law.

## COUNT III - MANDAMUS, 28 U.S.C. § 1361: CLEAR DUTY TO ACT.

69. Defendants owe a Clear, nondiscretionary duty to adjudicate Plaintiff Nur Ullah's immigrant visa application; Plaintiffs have a clear right to relief and no adequate alternative remedy. The Court should issue a writ compelling adjudication within a short, definite period.

## COUNT IV –DECLARATORY JUDGMENT, 28 U.S.C. § 2201.

69. An actual controversy exists regarding Defendants' obligations and Plaintiffs' entitlement to a timely decision. Declaratory relief will resolve uncertainty and prevent further harm.

## COUNT V - FIFTH AMENDMENT

70. Defendants' extreme delay in adjudicating a statutorily conferred benefit that directly implicates family integrity deprives Plaintiff Shariot Ullah of due process of law.

## COUNT VI - APA, 5 U.S.C. § 706(2)

71. Unlawful "Public Charge" Nationality Pause Policy. Defendants' January 14, 2026 Policy is final agency action that is arbitrary and capricious, not in accordance with law, in excess of statutory authority, and adopted without observance of procedure required by law. 5 U.S.C. § 706(2)(A), (C), (D). The Policy unlawfully converts the INA's individualized public-charge inquiry into a categorical nationality-based refusal regime, contrary to INA § 212(a)(4), 8 U.S.C. § 1182(a)(4), and Congress's prohibition on nationality-based discrimination in immigrant visa issuance, 8 U.S.C. § 1152(a)(1)(A). Because the Policy is a legislative rule with sweeping worldwide effect, it could not lawfully be implemented without notice and comment under 5 U.S.C. § 553.

72. The Policy is reviewable final agency action. It represents the consummation of Defendants' decisionmaking process on how consular officers must handle affected immigrant visa applications, and it has immediate legal consequences because it commands refusals and withholds visa issuance regardless of an applicant's individualized eligibility. Nor can Defendants invoke the APA's "foreign affairs" exception to evade notice and comment: the Policy regulates domestic visa eligibility and family reunification, and notice-and-comment procedures would not "provoke definitely undesirable international consequences."

## PRAYER FOR RELIEF

A. Declare that Defendants' delay in adjudicating Plaintiff Nur Ullah's immigrant visa is unreasonable and violates the INA, the APA, and applicable statutes, regulations, and

agency guidance, and that Plaintiffs are entitled to a prompt adjudication under the individualized standards Congress prescribed, without application of the January 14, 2026 Policy.

B.  Declare that Defendants' January 14, 2026 Policy titled "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge" is unlawful, null, and void, and set it aside under 5 U.S.C. § 706(2) Declare unlawful any policies, practices, or procedures by Defendants that result in indefinite administrative processing of family-preference immigrant visas once visa numbers are available.

C.  Vacate and set aside the January 14, 2026 Policy and any related guidance, "pause," or practices used to impose nationality-based public-charge refusals or to justify indefinite delay of Plaintiff Nur Ullah's visa application as arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law in violation of 5 U.S.C. §§ 702-706.

D.  Preliminarily and permanently enjoin Defendants, their agents, and all persons acting under them from applying the January 14, 2026 Policy to Nur Ullah, from refusing or withholding adjudication based on nationality, and from further unreasonable delay; and require adjudication of Nur Ullah's immigrant visa forthwith under lawful, individualized standards.

E.  Issue a writ of mandamus compelling Defendants to adjudicate Nur Ullah's visa application within 21 days or such time as the Court deems just and proper.

F.  Issue an order compelling Defendants to perform their duty to adjudicate the immigrant visa application of Nur Ullah within 21 days of the order, pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1).

G. Award Plaintiffs attorney's fees and costs under the Equal Access to Justice Act and other applicable law.

H. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

This day February 16, 2026,

By and through their Counsel,

SHARIOT ULLAH and NUR ULLAH

/s/Carl Hurvich

Carl Hurvich, Esq. (698179)
Brooks Law Firm
10 High Street, Ste 3
Medford, MA 02155
(617) 245-8090
carl@brooklawfirm.com