**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SHARIOT ULLAH and NUR ULLAH,
Plaintiffs,
v. Civil Action No. 25-cv-12804-LTS
HELEN LAFAVE and MARCO RUBIO,
Defendants.

**Memorandum in Support of Summary Judgment**

**Introduction**

This Court was among the first to recognize that the State Department's nationality-based immigrant-visa pause was likely unlawful. On June 2, 2026, it enjoined application of the pause to Nur Ullah and ordered the barrier lifted immediately. Doc. No. 28 at 17–24. The *CLINIC* court subsequently relied on this Court's preliminary-injunction decision in holding the same policy unlawful and vacating it nationwide under the APA. *Catholic Legal Immigration Network, Inc. v. Rubio* ("*CLINIC*"), No. 26-cv-858 (JAV), 2026 WL 2455099 (S.D.N.Y. Aug. 21, 2026), ECF No. 83 at 40–41, 55–56, 60. Nearly five months after this Court's injunction, Shariot Ullah's son still awaits completed adjudication of his visa application. The relief that recognized the Ullahs' right to lawful processing has yet to produce a decision. Plaintiffs now seek a final merits judgment and an enforceable deadline that gives practical effect to this Court's ruling.

The delay claim has also matured. Nur was interviewed on January 8, 2025. After this Court's injunction, the Embassy continued to request documents, and Plaintiffs continued to respond. On July 14, government counsel reported that the post had received the requested documents and anticipated completing adjudication within fourteen days. On August 13, counsel reported receipt of further requested evidence and again expressed hope that adjudication would follow soon. Yet Nur's application remains unresolved as of October 30, 2026, following another interview on October 7. Ex. C at C-007, C-010; Nur Declaration ¶¶ 2–3. A process that repeatedly

approaches completion, then remains pending without an identified endpoint, warrants a case-specific remedy under 5 U.S.C. §§ 555(b) and 706(1).

Plaintiffs also seek protection against a further consequence of the unlawful pause: subjecting Nur to additional public-charge criteria or procedural barriers that would not have governed his application had Defendants timely complied with their obligations and this Court's injunction. State's own *CLINIC* submissions connect the pause to development of new screening tools. Its September 10 cable simultaneously rescinds the unlawful pause and requires a new public-charge worksheet and training. The Court should prevent that transition from defeating the relief already granted by requiring adjudication under the public-charge standards and procedures in effect on June 2, 2026, without imposing additional or more burdensome agency-created public-charge requirements adopted afterward. Adjudication should be completed within thirty days, without waiting for further policy development or training.

**Record and procedural background**

Shariot Ullah is a United States citizen seeking reunification with his adult son, Nur, a citizen of Bangladesh. The Court previously considered Shariot's sworn evidence concerning his serious medical conditions, declining vision, need for his son's assistance, and distress from their separation. Doc. No. 28 at 7 n.8, 20–21 (discussing Doc. No. 23-6). Plaintiffs rely on that declaration, together with the current supplemental evidence identified in their statement of facts, for standing, the consequences of delay, and equitable relief.

Nur's January 8, 2025 interview was followed by administrative processing. The Embassy subsequently informed him that the nationality pause independently prevented issuance, even if he supplied a renewed medical examination and biometric photographs. Doc. No. 15-1 at 2. This was an express policy barrier, distinct from the Embassy's requests for additional documents.

The operative January 14 cable commands refusal of immigrant-visa applicants from seventy-five countries, including Bangladesh, when no other ground of ineligibility applies. It instructs officers to assess public charge individually, then impose the pause even when the assessment does not establish inadmissibility. It also directs officers to retain a pause refusal after an applicant overcomes a public-charge refusal. Administrative Record ("AR") STATE00001–00003, ¶¶ 2, 4–5. It reaches certain already approved cases as well. AR STATE00003–00004, ¶ 9.

On June 2, the Court enjoined application of that policy to Nur, preserved Counts I–III and VI, and dismissed Counts IV and V. Doc. No. 28 at 22–24. The Court denied the requested twenty-one-day adjudication deadline without prejudice after counsel stated that Plaintiffs were not then pressing it. *Id.* at 12. The present motion renews the request on a developed record and subsequent events; it does not seek reconsideration of the dismissed constitutional claim or assert the Declaratory Judgment Act as an independent cause of action.

Defendants produced the policy record on September 30. Peterson's certification expressly describes the materials considered in instituting the seventy-five-country pause. Ex. A, Peterson Certification ¶ 2 (Sept. 30, 2026). That record supports review of the policy under § 706(2). It does not purport to be Nur's complete consular file or a record of the later public-charge rollout. Plaintiffs separately identify the evidence offered to establish ongoing delay, present injury, and the appropriate remedy.

## I Summary judgment permits final resolution of the policy claim and adjudication of the supported delay claim

Rule 56(a) authorizes judgment on a claim or part of a claim when the movant shows entitlement to judgment as a matter of law. In reviewing completed agency action, the Court evaluates the administrative record and the legality of the agency's decision; it does not conduct an ordinary trial to recreate the agency's decisionmaking. *Atieh v. Riordan*, 727 F.3d 73, 76 (1st

Cir. 2013); *Olsen v. United States*, 414 F.3d 144, 155 (1st Cir. 2005). Agency action must rest on a rational connection between the facts found and the choice made. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983).

That record-review principle does not require the Court to disregard events after adoption of the challenged policy when determining whether a live controversy remains, whether ongoing inaction is unreasonable, or what prospective relief is needed. See *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560–61 (9th Cir. 2000) (later evidence in a failure-to-act suit); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (evidence establishing standing at summary judgment). Plaintiffs offer the later consular communications, government representations, and current declarations for those identified purposes. They do not use later declarations to replace State's contemporaneous justification for the January policy. Any disputed material facts relevant to delay or the scope of relief can be resolved separately while the Court enters judgment on the policy's legality under Rule 56(a) and identifies established facts under Rule 56(g).

The January cable is final agency action. It consummated the Department's decision to require nationality-based refusals and immediately bound consular officers and applicants. AR STATE00001–00004. It therefore satisfies both finality requirements. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (requiring consummation of agency decisionmaking and an action determining rights or obligations or producing legal consequences); Doc. No. 28 at 13–16. The delay claim, by contrast, seeks completion of a discrete agency action that remains outstanding. Section 706(1) authorizes relief where the agency has failed to take a discrete action that it is legally required to take. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63–65 (2004).

## II The nationality pause violates the INA and the APA

### A The Secretary displaced the individualized determination Congress requires

The INA assigns immigrant-visa determinations to consular officers and confines refusal to statutory and regulatory grounds. 8 U.S.C. §§ 1104(a), 1201(a), (g). The public-charge provision requires consideration of an applicant's individual age, health, family status, assets and financial resources, education and skills, and the applicable affidavit of support. 8 U.S.C. § 1182(a)(4)(B)–(C). Section 1152(a)(1)(A) separately prohibits discrimination in immigrant-visa issuance because of nationality, subject to its enumerated exceptions.

The pause operates after the individualized inquiry and overrides its favorable result. Paragraph 4 requires the officer to investigate ordinary grounds of ineligibility and then refuse under § 221(g) even if none applies. Paragraph 5 requires the same result after an applicant overcomes a public-charge refusal. AR STATE00002–00003. Thus, the operative disqualification is nationality itself. Nothing in § 1201(g) authorizes the Secretary to add that disqualification while the Department develops a different screening system. Section 1104(a)'s general administrative authority expressly preserves the consular functions concerning visa grants and refusals. See Doc. No. 28 at 17–19.

The regulation reinforces that division of authority: a visa may be refused only on a ground specifically stated in law or implementing regulations. 22 C.F.R. § 40.6. A directive to refuse otherwise eligible applicants pending future policy development is incompatible with that constraint. Plaintiffs therefore are entitled to judgment under § 706(2)(A) and (C), for the reasons this Court identified at the preliminary-injunction stage and the completed policy record now confirms.

**B The policy record also fails to justify the categorical barrier**

The policy's own structure defeats its claimed fit with public-charge screening. It requires individualized screening and nevertheless forbids issuance when the screening identifies no applicable ineligibility. AR STATE00002–00003, ¶¶ 4–5. The Department's action memorandum and the material it incorporates must justify that additional barrier, not merely the legitimate objective of screening applicants. AR STATE00005–00015. They supply no reason why a favorable individualized assessment must be disregarded for every applicant from a listed country, or why ordinary adjudication could not continue while future tools were developed.

State retained the ordinary statutory inquiry, required officers to apply it, and then made its result immaterial to issuance for the affected nationalities. The record supplies no rational connection between the outcome of that inquiry and the categorical refusal imposed afterward. The January 8 action memorandum anticipated preparation of the new guidance and procedures in approximately sixty days, yet the operative directive imposed the pause until further notice without an enforceable endpoint. AR STATE00005; STATE00002–00003. That mismatch supports judgment under § 706(2)(A). *State Farm*, 463 U.S. at 43. The Court may enter judgment on the independently sufficient statutory grounds without reaching Plaintiffs' alternative notice-and-comment theory.

**C Subsequent decisions confirm the policy defect and support individual relief**

In *Catholic Legal Immigration Network, Inc. v. Rubio*, No. 26-cv-858 (JAV), 2026 WL 2455099 (S.D.N.Y. Aug. 21, 2026), ECF No. 83 at 34–44, 51–52, 60, the court granted partial summary judgment against the same nationality-based policy under §§ 1152(a)(1)(A), 1201(g), and 1104(a), and 22 C.F.R. § 40.6. Its September 25 stay decision reaffirmed the distinction between individualized public-charge screening and categorical refusal of applicants already found

eligible. ECF No. 109 at 2–5. The policy judgment remains materially relevant notwithstanding the limited appellate stay discussed below.

In *Ali-Bappi v. Rubio*, No. 26-cv-2424 (RER), ECF No. 25 at 4–5 (E.D.N.Y. Sept. 17, 2026), the court summarily granted APA relief for another Bangladeshi beneficiary and directed individualized readjudication within thirty days. That order supplies a concrete example of relief beyond declaring the policy invalid. Its remedy preceded the Second Circuit's later partial stay in *CLINIC*.

*Ivanov v. Trump*, No. 26-cv-915 (RJL), 2026 WL 2494805, at *11–12 (D.D.C. Aug. 25, 2026), likewise rejected nationality as dispositive after the statutory inquiry failed to establish inadmissibility. The court also explained that *CLINIC*'s vacatur did not displace the need for independent plaintiff-specific relief. *Id.* at *16 & nn.25–26. *Storie v. Trump*, No. 26-cv-567 (AHA), ECF No. 34 at 17–19 (D.D.C. Aug. 25, 2026), provides a particularly useful remedial model. The court granted preliminary relief restoring processing positions affected by the pause and required completion within thirty days for applications refused because of it. It distinguished applications whose independent processing delays predated the pause. Plaintiffs seek the same attention to causation: preserve progress already made, identify any genuine independent obstacle, and complete the application on a schedule justified by its actual posture.

Other post-*CLINIC* orders demonstrate the importance of matching relief to the applicant's procedural position. *Medani v. Trump*, No. 5:26-cv-06332-EJD, ECF No. 83 at 21–23 (N.D. Cal. Aug. 28, 2026), granted preliminary relief for defined diversity-visa subclasses; it was not a merits judgment on Nur's family-sponsored application. More recently, *Castillo v. Rubio*, No. 26-cv-11422, ECF No. 24 at 6–11 (N.D. Ill. Oct. 14, 2026), required scheduling an interview within seven days to occur within thirty days based on that family's delay and hardship. It treated the

global rescheduling measure as authorized and nonfinal, while granting relief on the individual interview-delay claim. These decisions support a focused adjudication order grounded in the particular application and injury before the Court.

**D Plaintiffs seek independent relief on a continuing controversy**

The Court has already distinguished Plaintiffs' policy and ongoing-delay claims from review of a consular officer's substantive denial. Doc. No. 28 at 12 n.14, 22 n.18. The distinction accords with *Teles de Menezes v. Rubio*, 156 F.4th 1, 9–10 (1st Cir. 2025), which permitted review of an upstream petition reclassification rather than a visa denial, and *Pietersen v. United States Department of State*, 138 F.4th 552, 560 (D.C. Cir. 2025), addressing forward-looking challenges to policies governing consular decisions. The Court can decide the Secretary's statutory authority and compel required action while leaving the merits of visa eligibility to the consular officer.

On October 19, a single Second Circuit judge denied a temporary stay of *CLINIC*'s declaratory judgment and policy vacatur but granted a temporary stay of its vacatur and remand of individual refusals based solely on the policy, pending panel review. *CLINIC v. Rubio*, No. 26-2573, Dkt. 50.1 at 1–2 (2d Cir. Oct. 19, 2026) (Ex. D at D-017–D-018). Plaintiffs accordingly do not premise their requested individual relief on automatic invalidation of Nur's refusal by *CLINIC*. The First Circuit has explained that vacating an agency rule does not automatically void each individual decision made under it. *American Public Health Ass'n v. National Institutes of Health*, 145 F.4th 39, 50 (1st Cir. 2025), stay granted in part, *National Institutes of Health v. American Public Health Ass'n*, 145 S. Ct. 2658, 2660 (2025).

The present request instead rests on Nur's own surviving claims and this Court's June injunction. State's October 23 submission in *CLINIC* also confirms that administrative reconsideration continues under its September guidance notwithstanding the partial stay. *CLINIC*, ECF No. 132 at 1–2 (Ex. D at D-019–D-020). The submission states that previously pause-refused

cases are excepted from the in-person training prerequisite, while online training and adjudication-review requirements remain. *Id.* at 2. That representation is evidence of the Department's continuing process, not a substitute for an adjudication of Nur's application. The pending application, continuing family separation, and requested protection against identified consequences of the unlawful pause sustain the request for effective prospective relief. Nur Declaration ¶¶ 2–5; Uddin Declaration ¶¶ 2–6.

**III The continued delay requires a firm adjudication deadline**

**A Defendants owe a discrete duty to complete the pending adjudication within a reasonable time**

Section 555(b) requires an agency to conclude a matter presented to it within a reasonable time. Section 706(1) supplies the remedy for unreasonable delay. The applicable visa regulations require issuance or refusal following a properly completed application and provide for reconsideration when, within one year of the relevant refusal, the applicant presents further evidence tending to overcome it. 22 C.F.R. § 42.81(a), (e). Here, the Embassy reiterated its § 221(g) refusal and solicited further evidence on June 4, July 1, and July 30, 2026; government counsel acknowledged receipt of requested materials on July 14 and August 13, 2026, respectively, and described adjudication as forthcoming. Ex. C at C-002–C-005, C-007–C-010. Those submissions occurred within one year of the 2026 refusals and requests to which they responded. Nur subsequently attended another interview on October 7, and the application remains in administrative processing. Nur Declaration ¶¶ 2–4; Doc. No. 28 at 22 n.18.

Plaintiffs request completion of that discrete process. The Court has already held at the pleading stage that the continuing administrative processing presents a live delay controversy despite the § 221(g) label. Doc. No. 28 at 22 n.18. The subsequent requests, responses, and forecasts of imminent completion support that functional account on the present record. Section

706(1) permits the Court to require a decision while leaving its lawful substantive outcome to the agency. *Norton*, 542 U.S. at 64–65.

**B The *TRAC* factors favor relief on this case-specific record**

The six considerations in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"), examine the agency's rule of reason; any congressional timetable; the importance of human health and welfare; the effect of expedition on competing priorities; the interests prejudiced by delay; and whether impropriety need be shown. The First Circuit uses that framework. *Towns of Wellesley, Concord & Norwood v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987).

First, the elapsed time must be evaluated against the actual work remaining. Nur's January 2025 interview began a period of post-interview processing that now exceeds twenty-one months. The Court removed the nationality barrier in June. Defendants thereafter identified specific evidentiary requests, received additional materials, and in July predicted completion within fourteen days. Additional requested evidence was acknowledged in August. Ex. C at C-007, C-010. These concrete representations support requiring Defendants to identify the present impediment and finish adjudication on a short schedule.

The request does not depend on counting the entire period since the 2015 petition as agency-caused delay. The Court previously noted unexplained gaps before the interview. Doc. No. 28 at 7 n.9. The present showing concerns post-interview processing, the unlawful pause, and the failure to complete the application after the injunction and later documentary submissions. The July forecast was followed by a July 30 request for further evidence concerning domicile, sponsorship, and Nur's circumstances; government counsel reported on August 13 that the post had received additional evidence on August 12. Ex. C at C-007–C-010. Plaintiffs therefore do not treat the July forecast as proof that all eligibility issues had already been resolved. Plaintiffs also

distinguish the dates on which they uploaded documents from the dates on which the Embassy acknowledged receipt or determined sufficiency. Nur identifies clarification of a typographical error in his educational documents as the remaining step the Embassy has communicated to him. Nur Declaration ¶ 4. A prompt, specific explanation of what is needed to resolve that issue will permit completion of the outstanding adjudication.

*Ghasemi v. Rubio*, 812 F. Supp. 3d 129, 139–41 (D. Mass. 2025), rejected an unreasonable-delay claim involving approximately twenty-three months of ordinary processing. Plaintiffs do not rely on elapsed time or an optimistic forecast alone. Their showing includes the intervening unlawful categorical refusal, this Court's injunction, the subsequent documentary record, and a concrete need to determine what remains unfinished. Those circumstances require their own *TRAC* assessment.

Second, although Congress has not imposed a fixed deadline for this particular immigrant-visa adjudication, § 555(b) expressly requires a reasonable time. The absence of a numerical deadline does not authorize an indefinite policy hold. The Court can evaluate the agency's own forecast of completion and the concrete steps remaining without converting a general processing benchmark into a mandatory statutory deadline.

Third and fifth, the delay threatens health and family welfare. Shariot's sworn evidence established serious illness and the need for his son's practical and emotional support. Doc. No. 23-6 ¶¶ 4–12; Doc. No. 28 at 20–21. Shariot currently needs regular care. He needs help with basic tasks like walking, using the restroom, remembering basic things, taking medication, and attending medical appointments. His son-in-law, Mohammed Uddin, helps him as best he is able, but his full-time work in Springfield limits his visits to Lynn to approximately once per week. Uddin Declaration ¶¶ 2–5. Shariot is very close with his son and is eager for Nur to be able to come and

see him. He misses his son very much and becomes sad when Nur is discussed. Uddin Declaration ¶ 6; Nur Declaration ¶ 5. Time lost with an elderly and seriously ill parent cannot be restored by an eventual decision or compensated through money damages. Those harms bear directly on the *TRAC* inquiry and the need for a deadline.

Fourth, expedition should be measured against the particular processing posture. Nur seeks completion of an application already interviewed and repeatedly described as approaching adjudication. A short, case-specific deadline enforces the duty owed in this existing matter. Defendants' competing workloads remain relevant, but a generalized reference to the visa queue does not identify what competing task would be displaced, why Nur's application remains unfinished after the Department's forecast, or why additional policy development must precede a decision. Plaintiffs request a declaration identifying any actual competing priority, remaining check, document deficiency, or visa-number impediment if Defendants contend that thirty days is infeasible.

Sixth, no finding of bad faith is required. *TRAC*, 750 F.2d at 80. The issue is the reasonableness of the delay and the remedy needed to conclude the process. A documented sequence of unlawful suspension, repeated requests and responses, and unfulfilled predictions of completion can establish unreasonable delay without an accusation of improper motive.

**C A thirty-day deadline is tailored to the outstanding task**

The Court should direct Defendants to complete Nur's individualized adjudication within thirty days. Within seven days, Defendants should identify in a sworn report any still-missing applicant document, incomplete check, or visa-number issue, state when it arose, and explain the steps and time required to resolve it. A narrowly supported request to modify the deadline can address a concrete obstacle; a policy label should not operate as an indefinite extension.

The thirty-day period is supported by the advanced posture of this application and the government's own earlier fourteen-day forecast. It also corresponds to the individualized remedy in *Ali-Bappi*, ECF No. 25 at 5. Plaintiffs seek a decision under the INA, with a clear identification of any remaining lawful impediment. A status update or renewed unexplained administrative-processing notation would not conclude the matter. The Court should retain jurisdiction to review compliance.

**IV Effective relief should prevent the unlawful pause from subjecting Nur to new barriers**

**A State linked the pause to development of the later vetting system**

The original cable states that applicants must remain refused while the Department develops additional public-charge screening tools. AR STATE00002–00003, ¶¶ 3–5. State's September 11 Armstrong declaration in *CLINIC* explains the claimed shortcomings in the prior screening system and the purpose of new tools, forms, and training; it contends that adjudicating before those changes could result in issuance to applicants whom the Department would find ineligible afterward. Armstrong Declaration ¶¶ 4, 6–7, 9–10, *CLINIC*, No. 26-2573, ECF No. 22.1 (filed Sept. 28, 2026; declaration executed Sept. 11, 2026) (Ex. D at D-010–D-016). These are Defendants' descriptions of the connection between the pause and the new regime.

The September 10 cable, 26 STATE 88862, then rescinds the nationality pause while requiring a public-charge worksheet under 26 STATE 80666 and referring to comprehensive training under 26 STATE 86164. *CLINIC*, ECF No. 107-4 ¶¶ 2, 6, 8 (Ex. D at D-003–D-006). It encourages renewed interviews because of the time elapsed since prior interviews. *Id.* ¶ 6. That sequence makes the effects of the unlawful delay material to the remedy: the passage of time created by the pause may itself be used to require a different examination or impose an additional prerequisite to completion.

The *CLINIC* court rejected the asserted need to postpone relief while new screening measures were developed when denying a stay on September 25. *CLINIC*, ECF No. 109 at 6–8. At the August 31 compliance conference, Judge Vargas described requiring the affected applicants to undergo renewed public-charge review as "very contrary to the import of my order" and "grossly inequitable." *CLINIC*, ECF No. 115 at 8 (quoting Aug. 31, 2026 Tr. 34:3–9). The *CLINIC* plaintiffs subsequently sought protection against new procedures if adopted to frustrate the judgment. ECF No. 115 at 19–20.

**B The Court should restore the position Nur would have occupied absent the unlawful delay**

Permanent relief must address the proven injury and remain tailored to its cause. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); cf. *Milliken v. Bradley*, 433 U.S. 267, 280–82 (1977) (equitable restoration tailored to the violation). The Court found serious, noncompensable harm from Shariot's separation from Nur and identified individualized adjudication under Congress's standards as the appropriate alternative to the unlawful pause. Doc. No. 28 at 20–22. Continuing that protection requires an order preventing Defendants from replacing the unlawful pause with new barriers to completion.

Plaintiffs request an order requiring adjudication of Nur's application under the public-charge standards and procedures in effect when this Court entered its June 2 injunction and barring additional or more burdensome agency-created public-charge criteria or procedures adopted afterward. The government's July prediction of completion within fourteen days and its August acknowledgment of receipt of further evidence demonstrate that the application was nearing completion before the September rollout. Ex. C at C-007, C-010. Defendants should not obtain the benefit of that intervening change by prolonging the adjudication that this Court's injunction permitted to proceed.

The requested relief preserves the statutory public-charge inquiry, the applicant's burden to establish eligibility, and independent lawful grounds of ineligibility. It addresses additional agency-created requirements whose application to Nur results from the unlawful delay. Plaintiffs do not ask the Court to deem the visa issued on an earlier date or excuse a statutory eligibility requirement. Nur's October 7 interview included questions about anticipated public assistance, family support, and employment. Nur Declaration ¶ 3. Any remaining public-charge assessment should proceed under the standards and procedures in effect on June 2.

Defendants should also be ordered to adjudicate within thirty days without postponement solely to complete new public-charge training, develop a new worksheet or medical form, conduct additional review required solely by the later regime, or await a generalized policy review. Their sworn report within seven days should identify the steps taken to comply with these directives and any specific remaining lawful impediment to completion. Reporting should monitor compliance with the injunction and should not suspend or extend the adjudication deadline.

**C Current facts support permanent relief**

The existing declaration establishes the type of irreparable injury, and the current supplemental evidence establishes its continuation. Nur's father, Shariot Ullah, requires help with daily tasks, and additional help would make a difference for his well-being. Nur's assistance could help with medical appointments, mobility, medication, and remembering basic tasks. The separation is also psychologically difficult for Shariot. He does not seem to understand why Nur is not able to visit, and he misses his son very much. Uddin believes that Shariot's mental state would improve greatly if Nur were able to enter the United States and help provide care. Uddin Declaration ¶¶ 3–6; Nur Declaration ¶ 5. The continuing family separation is not compensable through the APA. The balance of hardships favors completion of one advanced application, and the public interest favors administration of the INA within its statutory limits. Defendants retain

the authority to make an individualized eligibility determination and to conduct concrete, lawful checks.

For the January policy claim, the Court should decide the merits on the certified policy record. For the delay claim and remedy, it should consider the post-injunction communications in Exhibit C and current declarations addressing documentary compliance, the application's status, health and caregiving needs, and the actual application of later requirements. Those materials support a thirty-day adjudication order and protection against additional agency-created public-charge requirements adopted after June 2. The Court should grant that individualized relief to effectuate its injunction and remedy the ongoing unlawful delay.

**Conclusion**

Plaintiffs request summary judgment on Counts I and VI; the same coercive relief under Count III in the alternative; and relief on Count II to the extent it concerns the same unlawful maintenance of the pause and administrative-processing barrier. The Court should permanently enjoin application of the January nationality pause to Nur, direct completion of his individualized adjudication within thirty days, require a sworn compliance report within seven days identifying any specific remaining lawful impediment, and retain jurisdiction to enforce those directives. It should also require adjudication under the public-charge standards and procedures in effect on June 2, 2026, and enjoin additional or more burdensome agency-created public-charge requirements adopted afterward.

Respectfully submitted,
SHARIOT ULLAH and NUR ULLAH,
By their attorney,

/s/ Carl Hurvich, Esq.
Carl Hurvich, Esq. (BBO No. 698179)
Brooks Law Firm
10 High Street, Suite 3
Medford, MA 02155
(617) 245-8090
carl@brookslawfirm.com
Dated: October 30, 2026

**Certificate of Service**

I certify that on October 30, 2026, the foregoing memorandum was filed through the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ Carl Hurvich, Esq.