**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SHARIOT ULLAH and NUR ULLAH,
Plaintiffs,
v. Civil Action No. 25-cv-12804-LTS
HELEN LAFAVE and MARCO RUBIO,
Defendants.

**Plaintiffs' Statement of Material Undisputed Facts**

Plaintiffs submit this statement under Local Rule 56.1 in support of their motion for summary judgment. "AR" citations identify the original STATE Bates pages of the administrative record produced on September 30, 2026, reproduced in Exhibit A with the separately supplied Peterson certification. Exhibits B, C, and D contain the supporting client records, processing correspondence, and later *CLINIC* policy documents, respectively. The separately filed October 30, 2026 Supplemental Declaration of Nur Ullah and Declaration of Mohammed Uddin are cited as "Nur Declaration" and "Uddin Declaration." References to "Doc. No." identify filings in this action; citations to other cases identify their separate dockets.

**Family and visa application**

1. Shariot Ullah was born in 1945 and became a naturalized United States citizen in Boston on November 23, 2020. Ex. B at B-005.

   RESPONSE:

2. Nur Ullah, born in 1991, is the beneficiary of the immigrant petition filed by his father, Shariot Ullah. The USCIS receipt notice identifies Shariot as the petitioner and Nur as the beneficiary. Ex. B at B-002–B-003, B-007–B-008.

   RESPONSE:

3. The original USCIS receipt notice records April 6, 2015 as the received date and priority date of the Form I-130 petition. USCIS approved the petition on July 27, 2015 under INA § 203(a)(2)(B), the category for an unmarried adult son or daughter of a lawful permanent resident, and stated that it had sent the approved petition to the National Visa Center. Ex. B at B-002, B-003.

RESPONSE:

4. Nur's DS-260 confirmation records completion of his immigrant-visa application on June 4, 2020 under case number DHK2015733034 and states that the application was automatically forwarded to the interview location. Ex. B at B-004.

RESPONSE:

5. In a signed letter dated January 12, 2024, Nur requested retention of F2B classification rather than conversion to F1 following his father's naturalization. Ex. B at B-007–B-008.

RESPONSE:

6. On October 31, 2024, the Embassy in Dhaka informed Nur that it had received his case from the National Visa Center and instructed him to schedule an immigrant-visa interview and complete a medical examination with a panel physician. Ex. B at B-009–B-010.

RESPONSE:

7. In a November 13, 2024 letter, Ibrahim Cardiac Hospital & Research Institute stated that Nur had worked there since November 5, 2019 as a Front Desk Officer in the Finance & Accounts Department. Ex. B at B-011.

RESPONSE:

8. The November 19, 2024 appointment confirmation scheduled Nur's immigrant-visa interview at the Embassy in Dhaka for January 8, 2025 at 8:30 a.m. and identified his visa class as F11. Ex. B at B-012.

   RESPONSE:

9. In a September 24, 2025 letter to Senator Edward Markey, the Embassy stated that Nur's immigrant-visa application was undergoing administrative processing. Doc. No. 14-1 at 1.

   RESPONSE:

**Shariot's medical and financial records**

10. In a November 9, 2023 letter, Elena Cherepanov, LMHC, stated that Shariot had been a patient at Lynn Community Health Center since 2015, suffered from multiple medical conditions and was severely depressed, and that delays in processing the visa applications of his sons Faiz and Nur had contributed to his depression. She expressed the belief that faster processing would positively affect his mental health. Ex. B at B-006.

    RESPONSE:

11. One of Shariot's caregivers, Mohammed Uddin, states that Shariot is very close to Nur, becomes very sad when Nur is discussed, and looks forward to seeing him. Uddin believes that Shariot's mental state would improve greatly if Nur were able to enter the United States and help provide care. Uddin Declaration ¶¶ 5–6.

    RESPONSE:

12. Uddin sees Shariot approximately once per week and last visited him on October 30, 2026. He also speaks with him by phone and video call multiple times per week. Uddin Declaration ¶ 2.

    RESPONSE:

13. Uddin has personally observed that Shariot needs help remembering basic things, using the bathroom, walking without falling, and taking medication. In June, Shariot fell in the bathroom and needed his granddaughter’s help to get up. Uddin takes Shariot to appointments approximately once per week, but his full-time work in Springfield limits his ability to visit Shariot in Lynn more often. Uddin Declaration ¶¶ 3–4.

RESPONSE:

14. Uddin has observed gaps in assistance with food, household upkeep, and depression. Nur communicates with his father approximately every other day; Shariot is happy to speak with him but sad about their separation and does not seem to understand why Nur cannot visit. Uddin Declaration ¶ 5; Nur Declaration ¶ 5.

RESPONSE:

15. Shariot’s March 31, 2026 Mass Eye and Ear after-visit summary records an ophthalmology visit and retinal testing of both eyes. It records distance visual acuity of 20/60−2 in the right eye and 20/60 in the left eye. Ex. B at B-013–B-014.

RESPONSE:

16. Shariot’s Massachusetts identification card, issued May 5, 2026, lists an address in Lynn, Massachusetts. An August 3, 2026 voter-registration printout lists him as active at the same Lynn street address. Ex. B at B-015, B-017.

RESPONSE:

17. The Social Security Administration’s June 9, 2026 benefit-verification letter states that Shariot was entitled to Supplemental Security Income as an aged individual and that his monthly payment beginning June 2026 was $745.50. Ex. B at B-016.

RESPONSE:

**The nationality pause and its application to Nur**

18. The administrative record includes Cable 25 STATE 102426, dated November 6, 2025, providing public-charge guidance to diplomatic and consular posts. AR STATE00028–STATE00040.

    RESPONSE:

19. The November 6 guidance required consideration of the totality of each applicant's circumstances and stated that no single factor, other than the absence of a sufficient required affidavit of support, could alone determine public-charge ineligibility. AR STATE00032, ¶¶ 12–13.

    RESPONSE:

20. A January 8, 2026 action memorandum recommended an immediate processing pause for nationals of the listed countries until the Department could implement new measures intended to prevent admitted aliens from receiving public assistance. The memorandum anticipated that implementing the new measures would take about sixty days. AR STATE00005.

    RESPONSE:

21. The January 8 memorandum stated that countries were selected based on Council of Economic Advisers information that thirty percent or more of immigrants from those countries used welfare, subject to certain foreign-policy exclusions. AR STATE00005.

    RESPONSE:

22. The accompanying table reports the percentage of immigrant households receiving assistance by country of origin and lists Bangladesh at 54.8 percent. AR STATE00010.

    RESPONSE:

23. On January 14, 2026, the Secretary of State issued Cable 26 STATE 3740, entitled "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge," to all diplomatic and consular posts. Bangladesh was among the countries listed in the cable. AR STATE00001, header and ¶ 2.

RESPONSE:

24. Effective January 21, 2026, the cable directed consular officers to refuse under INA § 221(g) immigrant-visa applicants from the listed countries who had not been refused under another ground of ineligibility. AR STATE00001–STATE00002, ¶ 2.

RESPONSE:

25. The cable instructed consular officers to continue conducting interviews and assessing potentially applicable grounds of ineligibility, including public charge. Officers who believed an applicant ineligible under the public-charge provision were directed to refuse on that ground and enter detailed case notes explaining the finding. AR STATE00002, ¶¶ 2, 4.

RESPONSE:

26. After assessing other potential grounds of ineligibility, officers were directed to refuse under § 221(g) applicants who had not been refused under another ground while the Department developed additional screening and vetting tools. The cable also required a § 221(g) refusal when additional evidence overcame a public-charge refusal. AR STATE00002–STATE00003, ¶¶ 4–5.

RESPONSE:

27. The cable stated that immigrant-visa issuance to applicants from the affected countries was paused "until further notice," and that the action would allow the Department to evaluate and enhance screening procedures and guidance concerning public-charge ineligibility. AR STATE00002, ¶¶ 3–4.

RESPONSE:

28. The cable instructed posts to request missing documents necessary to show eligibility, while stating that time-limited documents such as police clearances and medical examinations were not necessary for a § 221(g) refusal related to the pause. AR STATE00003, ¶ 6.

RESPONSE:

29. For an affected application already authorized for visa printing but not yet printed, the cable directed refusal under § 221(g) and prohibited printing the visa foil. AR STATE00003–STATE00004, ¶ 9.

RESPONSE:

30. For an affected visa already printed but still at the consular section, the cable directed cancellation of the foil, reopening of the case, and refusal under § 221(g). AR STATE00004, ¶ 9.

RESPONSE:

31. The cable exempted dual nationals applying with valid passports from unaffected countries and directed consular sections, when an applicant demonstrated travel serving a specific U.S. national interest consistent with Executive Order 14150, to consult their VO/F analyst about steps to assess public-charge eligibility. AR STATE00003, ¶ 8.

RESPONSE:

32. In the Embassy notice filed on March 2, 2026, the Embassy stated that Nur's case had been found ineligible under § 221(g) as a result of the nationality pause. Doc. No. 15-1 at 2.

RESPONSE:

33. The same notice stated that Nur's case also remained refused under § 221(g) because his medical-examination report had expired. It requested another medical examination and a new biometric photograph, but stated that the case would remain ineligible until the pause was lifted even if those items were supplied. Doc. No. 15-1 at 2.

RESPONSE:

**Processing after the injunction and production of the record**

34. On June 2, 2026, the Court enjoined Defendants and their agents from applying the nationality pause to Nur's application and ordered them to lift it immediately as to him. Doc. No. 28 at 23, ¶ 1.

RESPONSE:

35. The Court denied without prejudice the requested twenty-one-day adjudication deadline after counsel stated that Plaintiffs were not then pressing that request. Doc. No. 28 at 12.

RESPONSE:

36. The June 2 order denied dismissal of Counts I–III and VI and dismissed Counts IV and V. Doc. No. 28 at 22–23.

RESPONSE:

37. On June 4, 2026, the Embassy informed Nur that his case remained refused under § 221(g) and requested an updated Form I-864 and tax documents from Shariot, new joint-sponsor documents apart from Marjahan Begum, another medical examination because the prior report had expired, and two recent biometric photographs. Ex. C at C-002–C-003.

RESPONSE:

38. On July 1, 2026, the Embassy stated that the updated financial evidence from Shariot was insufficient and requested evidence of increased income from joint sponsor Marjahan Begum or a replacement joint sponsor, together with two recent photographs. Ex. C at C-004–C-005.

RESPONSE:

39. On July 14, 2026, Defendants' counsel informed Plaintiffs' counsel that the State Department reported receipt of the requested materials and active review of them. In requesting a fourteen-day extension of the status-report and answer deadlines, Defendants' counsel stated that State anticipated completing adjudication within that period. Ex. C at C-007.

RESPONSE:

40. On July 30, 2026, the Embassy requested evidence of Shariot's current U.S. domicile, Nur's education and employment skills, Nur's current financial resources, and the joint sponsor's and household member's current employment and income. The Embassy again stated that Nur's case remained refused under § 221(g). Ex. C at C-008.

RESPONSE:

41. On August 13, 2026, Defendants' counsel informed Plaintiffs' counsel that State reported the post had received additional requested evidence from Nur the preceding day. Counsel proposed waiting another two weeks for adjudication before proceeding to a schedule for production of the administrative record and cross-motions for summary judgment. Ex. C at C-010.

RESPONSE:

42. In their September 16, 2026 joint status report, the parties stated that Nur's immigrant-visa application remained without a final adjudication and that no visa had issued as of that date. Doc. No. 42 at 1, ¶ 2.

RESPONSE:

43. On September 17, 2026, the Court directed Defendants to produce the administrative record by September 30 and Plaintiffs to file their dispositive motion by October 30. Doc. No. 43.

RESPONSE:

44. In her certification signed September 30, 2026, Rachel Ann Peterson stated, to the best of her knowledge and belief, that the certified record contained all nonprivileged materials directly or indirectly considered by the Department in instituting the seventy-five-country immigrant-visa pause. Peterson Certification at 1, ¶ 2, and 2 (Ex. A).

RESPONSE:

45. Nur attended his initial immigrant-visa interview in Dhaka on January 8, 2025, and his most recent interview on October 7, 2026. At the latter interview, the officer asked about his plans in the United States, whether he planned to seek public assistance, his family members' work and ability to support him, and his employment plans. Nur Declaration ¶ 3.

RESPONSE:

46. As of October 30, 2026, Nur's immigrant-visa application remained refused under INA § 221(g) and in administrative processing, and no immigrant visa had issued. Nur identifies clarification of a typographical error in his educational documents as the remaining step the Embassy has communicated to him. Nur Declaration ¶¶ 2, 4.

RESPONSE:

**Subsequent policy developments**

47. On September 10, 2026, the Department issued Cable 26 STATE 88862, rescinding the January 14 nationality-pause guidance in its entirety and prohibiting further refusals based on that pause. The cable directed review of applications previously refused solely under the pause, required a public-charge worksheet, and referred to comprehensive public-charge training. *Catholic Legal Immigration Network, Inc. v. Rubio*, No. 26-cv-00858-JAV (S.D.N.Y.) (*CLINIC*), ECF No. 107-4 at 2–4 (ECF pagination), ¶¶ 2, 6 (Ex. D at D-003–D-005).

RESPONSE:

48. On October 19, 2026, the Second Circuit denied a temporary stay of *CLINIC*'s declaratory judgment and policy vacatur, temporarily stayed the vacatur and remand of individual refusals based solely on the policy, and referred the stay motion to a three-judge panel. *CLINIC*, No. 26-2573, Dkt. 50.1 at 1–2 (2d Cir. Oct. 19, 2026) (Ex. D at D-017–D-018).

RESPONSE:

49. In an October 23, 2026 filing in *CLINIC*, the *CLINIC* defendants represented that administrative review and reconsideration continued notwithstanding the October 19 temporary appellate stay and that the Department's September 10 and September 21 processing instructions remained unchanged. They further represented that previously pause-refused applications were excepted from the in-person public-charge-training prerequisite, while online training and adjudication-review requirements continued to apply. *CLINIC*, No. 26-cv-00858-JAV, ECF No. 132 at 1–2 (S.D.N.Y. Oct. 23, 2026) (Ex. D at D-019–D-020).

RESPONSE:

Respectfully submitted,
SHARIOT ULLAH and NUR ULLAH,
By their attorney,

/s/ Carl Hurvich
Carl Hurvich (BBO No. 698179)
Brooks Law Firm
10 High Street, Suite 3
Medford, MA 02155
(617) 245-8090
carl@brookslawfirm.com

Dated: October 30, 2026

**Certificate of Service**

I certify that on October 30, 2026, the foregoing statement, accompanying Exhibits A–D, and the separately filed declarations of Nur Ullah and Mohammed Uddin were filed through the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ Carl Hurvich